CLARA E. DONOVAN v. JAMES DONOVAN ET AL.

*Vendor's lien—Waiver.*

A wife, by joining with her husband in repeated conveyances, by way of mortgage, of land which she had conveyed to him for the express purpose of enabling him to raise money on such securities, waives her lien as vendor as to the mortgagees and as to attaching creditors of her husband.[1]

Appeal from Branch. (Loveridge, J.) Argued February 11, 1891. Decided February 27, 1891.

Bill to enforce a vendor's lien, and to restrain a sale of the premises on execution against the vendee. Defendants appeal. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*H. H. Barlow* (*Champion & Champion,* of counsel), for complainant.

*F. A. Lyon* and *D. J. Wile,* for defendants.

CHAMPLIN, C. J. On November 1, 1886, Clara E. Donovan was the owner in fee of certain real estate described in the bill of complaint in this cause. On that date she conveyed by quitclaim deed to the defendant James Donovan, who was and is her husband, all her right, title, and interest in and to said real estate, the consideration mentioned in said deed being $6,000 and other valuable considerations, which deed was duly recorded the day it was given. At the same time James

---

[1] For cases involving the question of vendor's lien, see *Williams v. Rice,* 60 Mich. 102; *Dunton v. Outhouse,* 64 Id. 419; *Waterfield v. Wilber,* Id. 642; *Richards v. Lumber Co.,* 74 Id. 57; *Balow v. Insurance Co.,* 77 Id. 540; *Bank v. Filer,* 83 Id. 496.

Donovan executed and delivered to her a promissory note for the purchase money, which note reads as follows:

"$6,000.                    QUINCY, MICH., Nov. 1, 1886.
"One year from date, for value received, I promise to pay to Clara E. Donovan, or order, six thousand dollars, with interest at seven per cent. per annum.
                              "JAMES DONOVAN."

This conveyance from the complainant to her husband was made for the express purpose of placing the title to the property in the defendant James Donovan, in order that he might mortgage it and raise money thereon. On November 16, 1886, the defendant James Donovan conveyed to his wife real estate of the value of $1,000, which sum was indorsed upon the aforesaid note.

On April 8, 1887, James Donovan, together with his wife, the complainant in this suit, executed a mortgage upon the property described in the bill of complaint in this suit to Ebenezer O. Grosvenor, for the sum of $2,500, which mortgage was duly recorded on the day of its date. On June 9, 1888, one John S. Ranney, of Chicago, Ill., commenced a suit in the circuit court for the county of Branch, in which county the real estate in dispute is situated, by attachment, and levied upon the whole of said premises; and such proceedings were had therein that at the March term, 1889, a judgment was rendered in favor of Ranney and against James Donovan for $7,352.15; and afterwards Ranney caused an execution to be issued out of said court, and levied upon said lands, claiming that they belonged to the said James Donovan, and he proceeded to advertise the same for sale under such execution. In the mean time, and on December 4, 1888, James Donovan and the complainant, his wife, executed a mortgage covering said property to one George Woodworth for the sum of $700; and again,

on February 25, 1889, Donovan and his wife executed another mortgage to Woodworth for $2,650. These mortgages were duly recorded.

On June 4, 1889, while Ranney was proceeding and advertising said land for sale on his execution, the complainant, Clara E. Donovan, filed her bill of complaint in the Branch circuit court in chancery, claiming a vendor's lien on the real estate for the unpaid purchase money, and claiming, further, that such lien was paramount to said attachment and execution levies; and praying, among other things, for an injunction restraining Ranney and the sheriff from further proceedings in the premises, and that her lien might be declared and foreclosed in the same manner as if it were a mortgage upon said premises, and that the defendant Ranney, and all persons claiming under him, might be foreclosed from all equity of redemption; and alleging, further, that the levy of the attachment and execution operated as a cloud upon her title to and interest in said premises, and that she held no other security for the purchase price of said lands except the note hereinbefore set forth. The bill also states that Frank A. Lyon claims to have some interest in the judgment rendered in favor of Ranney; and that Jesse B. Sutton, of Quincy, also claims and appears from the records of the register of deeds of said county to have a claim against and interest in said premises; and also that one Martha Conley claims an interest in said premises; but she avers that such claims, if any, are subject to her vendor's lien, as hereinbefore set forth.

The bill of complaint does not allege that George L. Maltz has any interest in the premises, but process of subpœna is prayed against him, and an answer is filed by John S. Ranney, George L. Maltz, and Frank A. Lyon, three of the defendants, to the bill of complaint. They

deny that the complainant has a vendor's lien or any lien upon the premises as against the rights of said defendants, or as against the rights of any of the creditors of said James Donovan. They admit the commencement of the suit by attachment, set up in the bill, in favor of Ranney against Donovan, but allege the fact to be that on June 9, 1888, and for a long time prior thereto, the said James Donovan was and had been the owner in fee-simple of said premises, and the whole thereof, and that the same were subject to levy and sale for the satisfaction of the debts of the said James Donovan, unaffected by any lien or claim of said complainant. They admit that Frank A. Lyon claims to have an interest in the claim of John S. Ranney in and to said premises, as set forth in the complainant's bill of complaint. They deny that Martha Conley has any interest in and to said premises.

James Donovan and Martha E. Conley filed a joint and several answer, admitting that James Donovan was the husband of the complainant, and admitting the sale by complainant to Donovan, the execution of the note, the payment of $1,000, and the levying of the execution, as stated in the bill, and that said Martha E. Conley claims that she has a life-interest in said premises.

A replication was filed to the answers, and proofs were taken in open court. The circuit judge decreed that the complainant had a lien on the premises, ordering a sale, as upon the foreclosure of a mortgage, to satisfy the lien.

It was said in *Hiscock v. Norton*, 42 Mich. at page 325, that—

"The general doctrine relative to what is understood as the vendor's lien upon realty rests on the postulate that it is not equitable for one to absorb another's wealth, without recompense; and, therefore, as between grantor and grantee, the court will intend that the purchased estate was to be held for the unpaid purchase money,

unless circumstances are found which repel the presumption. And among the circumstances which will have this effect are reckoned, first, the formation of arrangements between the parties, which suffice to make out that reliance was not placed on any unwritten claim against the land."

The taking of the note for the purchase price would not discharge a lien of the vendor; and the presumption would be, looking alone to the sale and taking of the note without security, that she had a lien for the purchase money. But the testimony of the complainant shows that she sold and conveyed the land described in the bill of complaint to her husband for the purpose of placing the title to the land in her husband to enable him to raise money thereon by mortgage, and that the several mortgages above referred to were executed for that purpose; that about the time the land was to be sold on execution, as she testifies, her husband spoke to her about filing a claim for a vendor's lien, and that was the first she ever thought of claiming a lien upon the property.

The first question to be determined is whether, at the time the complainant sold and conveyed the premises to her husband, she had, as between the vendor and the purchaser, a vendor's lien. The testimony shows that the sale was absolute, and the whole title in fee was conveyed to and vested in James Donovan. The consideration for the conveyance was $6,000, and it was evidenced by a promissory note, signed by Donovan, due one year from date, with interest at 7 per cent. The writing, therefore, fixed the amount to be paid and the time of the payment with certainty. It is true that the complainant testifies that at the time she deeded the property to her husband she did not know whether he would pay the note inside of a year; that she expected she would have her pay as soon as he could get around to

pay; that she expected that he would pay her along as he could; but she testifies that there was no agreement to that effect. Defendants' counsel insist that this testimony shows that there was no agreement as to the time and manner the consideration was to be paid, and therefore, on account of this uncertainty, no vendor's lien attached. We must, however, take the testimony of the witness as a whole, and we think there was no uncertainty as to the time when the purchase money was agreed to be paid; and at that time, as between herself and her husband, she had what has been recognized in this State as a vendor's lien.

Did she waive such lien by joining with her husband in the execution of the mortgages to Grosvenor and Woodworth? There can be no question that she did waive her lien as to the mortgagees named. Did she not also waive it as to her vendee? Her testimony is that she made the conveyance to him for the purpose of investing him with a legal title, in order that he might raise money by mortgage for his own use and benefit; and the reason why she did so was that he could not borrow the money on the strength of the title, before that time vested in them jointly as husband and wife. The case is peculiar. She voluntarily placed the absolute title in her husband. She then joined him in the execution of a conveyance by way of mortgage, which was apparently for the purpose of barring her dower. She now claims—a thing not thought of at the time—that by joining in the mortgage she not only barred her dower, but postponed a vendor's lien upon the premises to the mortgage executed to Grosvenor. Then, after the creditor attached, she waived her lien again by joining in the mortgages to Woodworth, but still retained it as against the attachment and execution levies. If this is so, some embarrassing question might arise in the disposition of

the various rights of the parties. Under the recording laws of the State, the liens would attach in the following order:

1. The Grosvenor mortgage.
2. The attachment of Ranney.
3. The Woodworth mortgage for $700.
4. The Woodworth mortgage for $2,650.

If the premises should be sold under a foreclosure of the Grosvenor mortgage, and bring more than a sum sufficient to satisfy the debt due to him, the other liens would be paid off with the surplus in the order of priority of record; but under the complainant's claim of vendor's lien she could not get in ahead of the mortgage liens given by her consent, but would have priority over the attachment lien. She is a subsequent incumbrancer to Woodworth's mortgages, but a prior incumbrancer to Ranney's execution levy. Ranney's execution levy, however, is a prior incumbrance to Woodworth's mortgages, though subsequent to complainant's lien. We think the complainant's dealings with the property by joining in repeated conveyances by way of mortgage operated as an extinguishment of her lien as a vendor.

The decree of the circuit court should be reversed, and the bill dismissed.

MORSE, McGRATH, and GRANT, JJ., concurred. LONG, J., did not sit.